Argued and submitted July 30, 2013, reversed and remanded May 14, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JENNIFER LYNN KENNY,
*Defendant-Appellant.*

Lane County Circuit Court
211101119; A148505

327 P3d 548

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

In this criminal case, defendant appeals a judgment convicting her of failure to appear on a criminal citation, ORS 133.076. Defendant assigns error to the trial court's (1) denial of her motion for judgment of acquittal (MJOA), (2) failure to instruct the jury on an element of the offense, and (3) exclusion of her testimony regarding the reason for her failure to appear. For the reasons that follow, we conclude that the trial court did not err in denying defendant's MJOA; however, we conclude that the trial court did err in excluding defendant's testimony. Accordingly, we reverse and remand. Given that disposition, we need not address defendant's contention concerning instructional error.

We begin with a brief overview of the events that led to defendant's conviction. Defendant's brother called the police to report that defendant had intentionally damaged his car. Officer Hughes investigated the report and called defendant, who denied damaging the car. Eventually, on November 15, 2010, Hughes met with defendant and issued her a citation for first-degree criminal mischief, ORS 164.365, a Class C felony. The citation directed defendant to appear in court on November 30, 2010, and indicated that her appearance was mandatory. Defendant informed Hughes that she was scheduled to be in the Virgin Islands on the date listed on the citation. Hughes told her that there was nothing he could do about the scheduled date.

When defendant did not appear in court on November 30, the state charged her with failure to appear on a criminal citation, ORS 133.076.[1] Before trial on that charge, the state filed a motion *in limine* to prevent defendant from testifying about why she had failed to appear, arguing that such evidence was not relevant under OEC 401. The trial court granted the state's motion and excluded defendant's evidence as irrelevant. After a jury trial, defendant was convicted, and she now appeals.

We begin with defendant's challenge to the trial court's denial of her MJOA. Under ORS 133.076(1), a person

---

[1] Defendant's cases were later consolidated and she was ultimately acquitted of the first-degree criminal mischief charge.

"commits the offense of failure to appear on a criminal citation if the person has been served with a criminal citation issued under ORS 133.055 to 133.076 and the person knowingly fails to do any of the following:

"(a) Make an appearance in the manner required by ORS 133.060."

Thus, the state was required to establish two elements: (1) defendant was served with a criminal citation issued under ORS 133.055 to 133.076 and (2) defendant knowingly failed to make an appearance in the manner required by ORS 133.060.[2]

At the conclusion of the state's evidence, defendant moved for judgment of acquittal, arguing that the state had failed to establish the first element because of its failure to prove that the citation was "issued under ORS 133.055 to 133.076." The trial court concluded that, if any determination concerning the authority for the citation defendant received were required, then it would be a matter for the court to decide, not the jury. On appeal, defendant's first assignment of error turns solely on her legal argument that ORS 133.076 requires the state to prove, beyond a reasonable doubt, that the state issued the citation in compliance with the requirements of ORS 133.055 to 133.076 and that she was entitled to acquittal because it is undisputed that the state failed to do so. Specifically, defendant contends that "the statute's text requires the state to prove that the citation was issued under the entire range of statutes from ORS 133.055 to ORS 133.076—not just ORS 133.055 and ORS 133.069."

In response, the state argues that defendant misconstrues the meaning of the phrase "issued under ORS 133.055 to 133.076." The state contends that the legislature did not intend to create additional elements of the offense when it included that phrase in ORS 133.076. Rather, the state contends, the phrase's plain meaning indicates that the legislature intended it to describe the type of citation

---

[2] ORS 133.060(1) provides, in relevant part:

"A person who has been served with a criminal citation shall appear before a magistrate of the county in which the person was cited at the time, date and court specified in the citation * * *."

that would form the basis for that particular iteration of the crime of failure to appear. We agree with the state.

Whether the phrase "issued under ORS 133.055 to 133.076" requires the state to prove, as an element of the offense, that the citation was issued in compliance with the requirements contained in those statutes is a question of statutory construction. In interpreting a statute, our task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We look first at the text and context of the statute, and consider legislative history if it appears useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The context of the statute "includes other provisions of the same and related statutes." *State v. Fitzhugh*, 260 Or App 401, 408, 317 P3d 371 (2013).

With those principles in mind, we begin, as we must, with the text of ORS 133.076(1). The legislature did not define "issued under," which defendant identifies as the key portion of the disputed phrase. Because the phrase includes terms of common usage, we give them their plain, natural, and ordinary meaning. *See PGE*, 317 Or at 611. Common definitions of the intransitive verb "issue" include "to proceed or come forth from a usu[ally] specified source," "to appear or become available through being officially put forth or distributed or granted or proclaimed or promulgated," and "to go forth by authority." *Webster's Third New Int'l Dictionary* 1201 (unabridged ed 2002). Common definitions of the preposition "under" include "required by : in accordance with : bound by," "in conditions or circumstances of," "attested or warranted by <issued [under] the royal seal>," and "subject to the bidding or authority of." *Id.* at 2487.

Combined, the meaning of those terms indicates that the phrase "a criminal citation issued under ORS 133.055 to 133.076" refers to a criminal citation that proceeded from the source of, and as authorized by, ORS 133.055 to 133.076. It follows from our reading of the phrase that, for the first element identified in ORS 133.076, the legislature intended that the state be required to prove only that the person was served with a criminal citation having as its source the

statutes listed in ORS 133.055 to 133.076, not that the citation, as issued, complied with those statutes.

Other textual indicators support that understanding. First, defendant's argument is not logical in light of the content and structure of the phrase "issued under ORS 133.055 to 133.076." The statutes referenced in ORS 133.076 generally describe the authority for, content of, and procedure for issuance of criminal citations, and ORS 133.076 states the offense for failure to appear on a criminal citation. Under defendant's view, the state would have to prove compliance with all of the listed statutes; yet necessarily, for any offense charged, some of the statutes listed in ORS 133.076 will not apply. For instance, ORS 133.068 describes what must be included in a criminal citation that is issued without a complaint, whereas ORS 133.069 describes what must be included in a criminal citation issued with a complaint. Additionally, ORS 133.070 sets forth the conditions in which a criminal citation may be issued for the violation of an ordinance in lieu of an arrest, as opposed to a criminal citation issued for the commission of a misdemeanor or felony under ORS 133.055, as in this case. Moreover, defendant's reading would require the state to prove to a jury not only that the authority for, content of, and process used to issue the citation were proper but also that the criminal citation was "issued under" ORS 133.076, the criminal offense itself.

Second, the import of defendant's argument is that the state would be required to prove three elements to the factfinder to establish an offense under ORS 133.076. Defendant's contention ignores the structure of the sentence, which suggests that the state must prove the two elements that are separated by the term "and": "A person commits the offense of failure to appear on a criminal citation *if* the person has been served with a criminal citation issued under ORS 133.055 to 133.076 *and* the person knowingly fails to do any of the following * * *." (Emphasis added.) Defendant's proposed reading would require the state to prove a third element, namely, that the citation, in addition to being served, was also in compliance with the requirements contained within ORS 133.055 to 133.076. The legislature could

have, but did not, insert an additional "and" between the requirements that "the person was served with a criminal citation" and that the citation was "issued under ORS 133.055 to 133.076," nor did the legislature otherwise indicate a series of three elements for the offense. Although there can be subparts to an element, the insertion of defendant's proposed requirement is not supported by a plain reading of the phrase.

The context of ORS 133.076 confirms our conclusion. One of the other statutes ORS 133.076 references, ORS 133.069(3), provides that, if the complaint does not conform to the requirements of ORS 133.069, "the court shall set the complaint aside *upon a motion of the defendant* made before entry of a plea." (Emphasis added.) Although this case does not deal with a criminal citation issued with a complaint, ORS 133.069 suggests that, under the statutory scheme contemplated by the legislature, an allegation of noncompliance with the listed statutes is an issue best raised by the defendant in a pretrial motion, rather than tried to the factfinder. *See also State v. Rainoldi*, 351 Or 486, 498, 268 P3d 568 (2011) (stating that, "[o]rdinarily, an element that is purely a question of law is a matter for the court").

Furthermore, defendant's argument does not account for the fact that there is more than one type of "failure to appear" offense. *See, e.g.*, ORS 153.992(1) ("A person commits the offense of failure to appear *in a violation proceeding* if the person has been served with *a violation citation* issued under this chapter and the person knowingly fails to do any of the following: (a) Make a first appearance in the manner required by ORS 153.061 within the time allowed." (Emphasis added.)). The need to distinguish types of "failure to appear" offenses provides further support for our conclusion that the legislature's inclusion of the phrase "a criminal citation issued under ORS 133.055 to 133.076" was intended to identify the type of citation issued, in accordance with the offense defined in ORS 133.076.

Defendant does not urge a different construction based on legislative history, and we have found nothing in the legislative history of ORS 133.076 to suggest one. Accordingly, the state was required to prove only that

defendant was served with a criminal citation having as its source the statutes listed in ORS 133.055 to 133.076.

With that understanding of ORS 133.076, we readily conclude that the evidence at trial was sufficient to support the first element. The state proved that defendant was served with a criminal citation for first-degree criminal mischief. And, under ORS 133.055,[3] one of the statutes enumerated in ORS 133.076, a peace officer has authority to issue a criminal citation to a person if the officer has probable cause to believe that the person has committed any felony that is subject to misdemeanor treatment under ORS 161.705,[4] which includes Class C felonies like first-degree criminal mischief. ORS 161.705(1)(a). Because satisfaction of the first element in ORS 133.076 only requires the state to prove, beyond a reasonable doubt, that the defendant was served with a criminal citation that proceeded from the source of, and as authorized by, ORS 133.055 to 133.076, a rational factfinder could have found that the state met its burden in this case. Accordingly, the trial court did not err in denying defendant's MJOA.

We turn to defendant's third assignment of error, in which she argues that the trial court erroneously excluded her testimony regarding the reason she failed to appear on the basis that it was irrelevant under OEC 401. Defendant intended to explain to the jury her mistaken belief that she was not required to appear at the time and place stated in the criminal citation that she received because she thought that the district attorney would not bring charges against her.

The state filed a motion *in limine* and sought to exclude

"testimony from the defense that the defendant made efforts to move her arraignment date, why she attempted to move her arraignment date, and to explain where she was at the time she was scheduled to be arraigned."

---

[3] ORS 133.055 was amended twice in 2011. *See* Or Laws 2011, ch 595, § 53b; Or Laws 2011, ch 666, § 3. Those amendments are not pertinent to our analysis.

[4] ORS 161.705 was amended in 2013. *See* Or Laws 2013, ch 591, § 5. That amendment is not pertinent to our analysis.

The state argued that the testimony was irrelevant under OEC 401 and merely served defendant's attempt to place mitigating information before the jury and to garner its sympathy. In particular, the state argued that "why [defendant] did not appear in this case [was] not at issue" and, instead, "only that she did not appear" was.

In response, defendant argued that the testimony was relevant to address whether she "knowingly" failed to appear. Defense counsel explained that defendant intended to testify at trial that, after she received the citation, she visited the district attorney's office and the police station, heard nothing more about charges being filed, assumed that the district attorney's office was not charging her, and concluded that she need not appear on November 30. In an offer of proof at the motion hearing, defendant confirmed her counsel's description of the events:

> "When I went—my purpose to go to the DA was to find out what I could do, you know—whatever—you know, what the responsible thing was to do. [The DA's office] told me that they would have to see the police report before they would even decide if there was going to be any charges made.
>
> "So I went back to the police station and asked for the police report to be sent over to the DA's office. And at that point, I didn't know that there were going to be any charges actually made.
>
> "* * * I didn't realize that there was actually—I thought that the DA was going to look at it and, you know, to my ignorance, I thought they would see that, you know, it was him versus me and that there weren't going to be any charges. So I felt that it was okay to leave.
>
> "* * * * *
>
> "* * * I watched [the employee at the police station] write a note explaining the situation and asking [Hughes] to get the police report over to the DA's so that [the DA's office] could—in their exact words, decide whether charges were going to be brought.
>
> "* * * * *
>
> "I thought that—at that point, I thought that no charges were going to be brought. I didn't realize a citation was

for an arraignment. Like I said, I've never dealt with this before. I've never had to—you know, been in this situation. So because of my knowledge of what happened and knowing that I didn't do anything and that it was just, you know, one person's word against another, I just—like I said, my ignorance told me that I would, you know—that the DA would look at it and not press charges and that would make the citation null and void."

The trial court granted the state's motion to exclude the evidence. In reviewing a court's determination of relevance, we review for legal errors. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). A trial court has no discretion under OEC 401 to exclude evidence that is logically relevant. *Id.*

On appeal, the parties basically reprise their arguments at trial. Specifically, defendant argues that her explanation would have increased the probability of the jury finding that she did not know that she was obligated to appear and thus tended to negate an element of the offense. The state argues that defendant's mistaken belief is not probative of whether she "knowingly" acted. Its argument rests on the assumption that proof of a person's knowing failure to appear requires only a showing that the person failed to appear with knowledge of the citation's contents, that is, a statement that an appearance is required at a certain date, time, and location. *See State v. Carter*, 238 Or App 417, 422, 241 P3d 1205 (2010), *rev den*, 350 Or 130 (2011) (holding that a reasonable factfinder could have inferred, based on the citation and the complaint, that the defendant knew that she was charged with reckless driving and was required to be in court, even if she was not aware of all of the consequences that might flow from a failure to appear).

Thus, the parties disagree over whether a defendant who receives a criminal citation can offer proof of later occurrences and a misunderstanding as to the requirement to appear, despite the written command in the citation to appear in court at a particular date and time. We agree with defendant that evidence of her belief that she was not required to appear, despite the command of the citation, was logically relevant.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. As explained above, a person commits the offense of failure to appear on a criminal citation if, among other things, the person knowingly fails to appear. ORS 133.076. A person acts knowingly if the person "acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). The knowingly mental state "refers to awareness of conduct and not awareness of the result of particular conduct." *Carter*, 238 Or App at 422 (internal quotation marks and emphasis omitted). "Thus, to prove that defendant knowingly failed to appear, the state had the burden to prove that she *knew of her obligation* to appear on that date." *Id.* at 421-22 (emphasis added); *see also State v. Rogers*, 185 Or App 141, 144, 59 P3d 524 (2002) ("[T]he state was required to prove that defendant knew that she was obligated to appear on that date.").

In light of what the state was required to prove—defendant's knowledge of her obligation—defendant's proffered testimony met the low threshold for relevance under OEC 401 because it tended to negate her knowledge that she was obligated to appear on November 30. Our decision in *State v. Ross*, 123 Or App 264, 859 P2d 569 (1993), supports our conclusion and defendant's view that, despite her knowledge of the appearance date in the criminal citation, defendant's belief that she need not appear at the time commanded bears on whether she "knowingly" failed to appear.

In *Ross*, the defendant was arrested and charged with unauthorized use of a vehicle (UUV) under ORS 164.135; his mother was the victim. 123 Or App at 266. Although the defendant signed a conditional release agreement in which he agreed to appear in court, he did not appear on the date required. *Id.* To support his defense, he sought to introduce his mother's statement that she was dropping the charges and a letter written by his mother requesting dismissal of the UUV charge. *Id.* The trial court granted the state's motion *in limine* to exclude that evidence as irrelevant. *Id.* The defendant appealed, arguing that, because he was charged with "intentionally" failing to appear, he was

entitled to present evidence of his state of mind, namely, his mistaken belief that he was not required to appear because the charges had been dropped. *Id.* The state argued that the evidence was not relevant, because the only intent required under the failure-to-appear statute under which he was charged, ORS 162.205, was the intent to engage in particular conduct, *i.e.*, the "failure to appear as required." *Ross*, 123 Or App at 266. We rejected the state's assertion that, if a defendant has a "conscious objective" not to appear, the defendant's reason for not appearing is irrelevant. *Id.* We concluded that the legislature's "willingness to exclude negligent failure to appear from culpable conduct" indicated its "willingness to also allow other similar exclusions," such as mistake. *Id.* at 268. We held that evidence of the defendant's mistaken belief as to the necessity of his appearance was relevant and that the trial court erred in excluding it. *Id.*

The same reasoning applies here. Defendant admitted that she did not appear on November 30 but sought to introduce evidence that she believed, although mistakenly, that the district attorney would not bring charges and that she did not have to appear. Similar to the evidence in *Ross*, defendant's evidence of her alleged mistake concerning the necessity of her appearance was relevant and admissible.[5] Accordingly, we conclude that the trial court erred when it excluded defendant's proffered evidence.

Although the trial court erred in excluding the evidence, we must decide whether that error requires reversal. An evidentiary error is reversible only if it is prejudicial. *State v. Dimmick*, 248 Or App 167, 176, 273 P3d 212 (2012); *see also* OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). We will therefore affirm a conviction despite evidentiary error if we can say that there is "little likelihood that the particular error affected the verdict."

---

[5] In addition to arguing that the testimony was irrelevant, the state asserts for the first time in a one-sentence statement that defendant's mistaken belief is a mistake of law that should have no bearing on the case. We decline to address that assertion. *See Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument.").

*Dimmick*, 248 Or App at 176 (internal quotation marks and brackets omitted). We cannot say so in this case.

As noted, the case was tried to a jury. The excluded evidence spoke directly to whether defendant possessed the required mental state of "knowingly" failing to appear, and it supported her sole theory of defense to the charge. Thus, we conclude that the trial court's exclusion of the evidence was not harmless, *see State v. Davis*, 336 Or 19, 33-34, 77 P3d 1111 (2003) (concluding that evidentiary error was prejudicial, in part because the excluded evidence went "directly to the heart of defendant's factual theory of the case"), and, therefore, we reverse and remand.

Reversed and remanded.